IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVE BLUMFELDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00999 |
| | ) |
| CHUBB SOLUTIONS INSURANCE AGENCY, INC., | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Plaintiff Steve Blumfelder, a former employee of Defendant ACE American Insurance Company[1] (ACE), entered into an agreement with ACE that requires both parties to arbitrate all disputes arising out of their employment relationship.[2] Courts nationwide have enforced ACE's Employment Dispute Arbitration Policy (the Arbitration Agreement) to compel arbitration. This Court should do the same.

Defendant respectfully requests this Court enforce the Arbitration Agreement; compel the parties to arbitration; and dismiss Plaintiff's claims or, in the alternative, stay proceedings pending completion of the arbitration.

### FACTUAL BACKGROUND

Plaintiff brings employment discrimination claims under the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Missouri Human Rights

---

[1] Plaintiff improperly identified Chubb Solutions Insurance Agency, Inc. as his employer in his Complaint. Chubb Solutions Agency, Inc. did not employ Plaintiff. Plaintiff's employer was ACE American Insurance Company. Defendant will address this issue in a separate motion. For purposes of this Motion, however, it is of no consequence since both entities are covered by the arbitration agreement discussed below.

[2] *See* ACE's Employment Dispute Arbitration Policy ("Arbitration Agreement"), attached hereto as **Exhibit A**, Denise R. Carson Declaration (hereinafter "Carson Decl."), Exhibit 2.

1

Act (MHRA). (Compl. counts I-III). Specifically, he alleges his termination, after being on medical leave for three years, constitutes a failure to accommodate his disability. (*Id.*, ¶¶ 5-18.) He further alleges that ACE's "best interest appeared to be eliminating" Plaintiff in order to acquire younger employees. (*Id.*, ¶¶ 28(g), 37(f).)

### Plaintiff's Hiring and Onboarding Included the Parties' Binding Arbitration Agreement

On February 13, 2015, ACE provided Plaintiff a written offer of employment (the "Offer Letter") to work as an Auto Claims Appraiser. (Carson Decl., ¶¶ 4, 13, Exhibit 1.) In pertinent part, the Offer Letter briefly described ACE's Arbitration Agreement, provided a link to it, and explained that before he could begin employment at ACE, Plaintiff must "print, sign, scan and return the Arbitration Agreement Policy Document and Receipt provided in the Link." (*Id.*, Ex. 1, p. 2.) Plaintiff accepted the offer of employment and signed the Arbitration Agreement on March 6, 2015. (*Id.*, ¶ 13, Exhibit 2, p. 3.)

### The Parties' Arbitration Agreement

The Arbitration Agreement states:

> This policy is a contract between ACE and the employee that prevents both ACE and the employee from going to court over employment-related disputes.

❖❖❖

> This policy covers all employment-related disagreements and problems that concern a right, privilege or interest recognized by applicable law. Such disputes include claims, demands, disputes, controversies or actions under [enumerated federal laws including the ADEA and ADA] and under any other federal, state or local statute, regulation, ordinance or common law doctrine, regarding unfair competition, the employment relationship, employment discrimination, retaliation, whistleblowing, wage and hour matters, conditions of employment or termination of employment.

(*Id.*, ¶ 5, Ex. 2.) The final page of the Arbitration Agreement states in its entirety:

ARBITRATION AGREEMENT:

> I agree that, in the event I have any employment related legal claims, I will submit them to final and binding neutral third-party arbitration, in accordance with the ACE Employment Dispute Arbitration Policy recited above, which is made a part of this agreement. I understand that this agreement means that I cannot bring any employment related claim in court and that I waive my right to a jury trial for such claims.

(*Id.*, ¶ 12, Ex. 2, p. 3.) Plaintiff's handwritten signature, handwritten printed name, and the handwritten date "3-6-15" appear in the signature block immediately below this paragraph. (*Id.*, ¶ 13, Ex. 2, p. 3.)

The Arbitration Agreement also incorporates a delegation clause through the American Arbitration Association Employment Arbitration Rules (AAA Rules). Attached hereto as **Exhibit B**. The Arbitration Agreement between Plaintiff and ACE specifically incorporates the ACE Arbitration Rules and Procedures (ACE Rules), stating that they are based on and generally follow the AAA Rules. (Carson Decl., ¶ 9, Ex. 2., p. 2.) Further, the ACE Rules explicitly state that "[w]here these Rules do not address an issue, the Arbitrator should refer to the National Rules for Resolution of Employment Disputes of the American Arbitration Association." (*Id.*, ¶ 11, Exhibits 3 and 4, § 8.) Here, neither the Arbitration Agreement, nor either set of the ACE Rules address the issue of who decides the arbitrability of any employment dispute between the parties. The AAA Rules, however, delegate the issue of arbitrability to the arbitrator, not the courts, stating:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(Exh. B, § 6(a).)

**Plaintiff Failed to Arbitrate His Claims Despite His Contractual Obligation to Do So**

Despite having agreed to arbitrate all employment-related disputes, on August 24, 2022, Plaintiff filed the instant Complaint in state court (which ACE timely removed to this Court).

3

Plaintiff nonetheless refuses to proceed to arbitration, despite ACE supplying him with a copy of the Arbitration Agreement.³ Due to Plaintiff's refusal to honor his agreement to arbitrate, ACE has been forced to file the instant motion to compel arbitration and dismiss Plaintiff's claims or stay this action. The Court should compel Plaintiff to arbitrate his claims.

## ARGUMENT

Arbitration agreements are favored by the courts. Indeed, courts nationwide have enforced this particular Arbitration Agreement. This Court should follow suit and compel the parties to arbitration.

When ruling on a motion to compel arbitration where an agreement incorporates a delegation provision, courts follow a two-step process that can end at the first step. Courts must first decide *who* decides whether the agreement is valid and enforceable. *Jones v. Titlemax of Missouri, Inc.*, 2016 WL 4158886, at *4 (E.D. Mo. Aug. 5, 2016). If the arbitration agreement delegates this issue of arbitrability to an arbitrator, the court's inquiry is finished and it must compel arbitration. *Wallace v. Commun's Unlimited, Inc.*, 2019 WL 1001701, at *3 (E.D. Mo. Mar. 1, 2019). Only if the court decides the delegation clause is *not* valid and enforceable, or if no such delegation exists, does the court turn to whether the arbitration agreement itself is valid and enforceable. *Titlemax*, 2016 WL 4158886, at *6. In that situation, if the court finds that the agreement is valid and enforceable, then again, the court must compel arbitration. *See Carlisle v. CitiGroup, Inc.*, 2008 WL 68845 at *2 (E.D. Mo. Jan. 4, 2008).

This Court should compel the parties to arbitration for either of these two reasons. First, the Arbitration Agreement delegates the issue of arbitrability to an arbitrator, not the courts.

---

³ Plaintiff effectuated service on or about August 25, 2022. Thereafter, and beginning September 23, 2022, counsel for ACE attempted to contact counsel for Plaintiff twice via electronic mail to ask their client to honor the Arbitration Agreement, but got no response as of the filing of this Motion. Attached hereto as **Exhibit C**.

4

Second, even if the Court chooses not to enforce the parties' incorporated delegation clause, the Arbitration Agreement is itself valid and enforceable. Either way, Plaintiff's claims must be sent to arbitration, and the Court should dismiss them, or stay proceedings pending arbitration.

**I.       Agreements to Arbitrate are Valid, Enforceable and Favored by Courts.**

It is well settled that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to agreements to settle disputes, in both state and federal courts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *McIntosh v. Tenet Health Systems Hospitals, Inc./Lutheran Medical Center, et al.*, 48 S.W.3d 85, 88 (Mo. App. 2001). The FAA evinces a national policy favoring the arbitration of disputes by compelling courts to enforce agreements to arbitrate, stay court proceedings, and compel arbitration.  It makes private agreements to submit disputes to arbitration valid and enforceable and requires courts to enforce arbitration agreements in the same manner they enforce all contracts. *See* 9 U.S.C. § 1 *et seq.*; *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 474 (1989). Consequently, both Missouri federal and state courts have jurisdiction in matters involving the FAA. *See Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 839 (Mo. banc 1985); *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943 (8th Cir. 2001).

The United States Supreme Court has held that the FAA may be used to enforce mandatory arbitration agreements between employers and employees that are required as a condition of employment. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). In *Circuit City*, the Supreme Court considered whether the arbitration component of Circuit City's Associate Issue Resolution Program could be enforced pursuant to the FAA. In concluding that enforcement was appropriate, the Supreme Court expressly recognized the benefits of arbitrating employment disputes:

> [F]or parties to employment contracts … there are real benefits to the enforcement of arbitration provisions.  We have been clear in rejecting the supposition that the

>advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in the employment litigation[.]

*Id.* at 123 (citations omitted); *see also Gilmer v. Interstate-Johnson/Lane Corp.*, 500 U.S. 20, 26-31 (1991) (agreements to arbitrate in the employment context are valid); *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 22 (Mo. App. 2008) ("[t]here is nothing that would preclude the possibility of an employer and its employees from entering into an enforceable agreement to arbitrate claims, including statutory claims"); *Hull v. NCR Corp.*, 826 F. Supp. 303, 305-06 (E.D. Mo. 1993) (same); *Boogher v. Stifel, Nicolaus & Co., Inc.*, 825 S.W.2d 27, 29 (Mo. App. 1992) (under the FAA, discrimination claims brought pursuant to the MHRA can be subject to compulsory arbitration).

In *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, the Supreme Court held "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." 460 U.S. 1, 24-25 (1983). Under Missouri law too, the Court of Appeals in *Morrow* made it clear that arbitration agreements in the employment context are valid and enforceable if the parties meet the material requirements. *See Morrow*, 273 S.W.3d at 23-24.

Notably, courts nationwide have upheld nearly identical versions of *this* particular Arbitration Agreement. *See Brandl v. Ace USA*, 2011 WL 129422, at *6 (E.D. Pa. Jan. 14, 2011); *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 764 (E.D. Tenn. 2011); *Abraham v. ESIS, Inc*, 2008 WL 220104, at *6 (N.D. Cal. Jan. 25, 2008); *Scrivner v. Ace USA*, 2007 WL 4124497, at *3 (E.D. Pa. Nov. 20, 2007); *Carfagno v. Ace, Ltd.*, 2005 WL 1523530, at *12 (D.N.J. June 28, 2005); *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp. 2d 32, 35 (D.P.R. 2004). This Court should

6

also enforce the parties' Arbitration Agreement here.

II.   **The Arbitration Agreement Incorporates a Delegation Clause and This Court Must Send This Case to Arbitration Without Determining its Validity or Enforceability.**

Issues regarding the arbitrability of this dispute are for an arbitrator to decide. *See Wallace*, 2019 WL 1001701, at *6 (delegating "even fundamental contract-formation issues to the arbitrator" and compelling arbitration). Under Missouri law, issues of validity and enforceability of arbitration agreements may be delegated to an arbitrator. *See Soars v. Easter Seals Midwest, et al.*, 563 S.W.3d 111, 115-16 (Mo. banc 2018); *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017). "If the delegation provision is valid as a matter of law, all other issues raised in the case should not be addressed, and the Court's only role will be to enter an order compelling arbitration." *Wallace*, 2019 WL 1001701, at *3 (citations omitted). Where an agreement clearly references the American Arbitration Association rules and integrates those rules into their agreement, the parties have expressed their intent to arbitrate any dispute under the AAA employment arbitration rules, including the rule providing that the "[a]rbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *State ex rel. Pinkerton*, at 48; *see also Arment v. Dolgencorp, LLC*, 2018 WL 5921369, at *2 ("[w]hen AAA rules are incorporated into the Agreement, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability." (internal quotations omitted)).

The Missouri Supreme Court has held that the AAA delegation provision clearly and unmistakably evidences the parties' intent to delegate threshold issues of arbitrability to the arbitrator. *Id.*; s*ee City of Chesterfield v. Frederich Constr. Inc.*, 475 S.W.3d 708, 711 (Mo. Ct. App. E.D. 2015) ("[t]he parties incorporated AAA rules into their agreement, which made them as much a part of the contract as any other provision."); *see also Dotson v. Dillard's, Inc.*, 472 S.W.3d

599 (Mo. Ct. App. W.D. 2015) (holding arbitrator had exclusive authority to decide whether a case was subject to arbitration); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877 (8th Cir. 2009) (parties incorporated arbitration agreement into contract by stating their disputes "shall be settled by arbitration in accordance with the Commercial Rules of the American Arbitration Association").

Here, the Arbitration Agreement between Plaintiff and ACE specifically incorporates the ACE Rules, stating that they are based on, and generally follow AAA Rules. (Carson Decl., ¶ 9, Ex. 2.) Further, the ACE Rules make clear that any unaddressed issue in the Arbitration Agreement or the ACE Rules themselves will be governed by the AAA Rules. (*Id*., ¶ 11, Exhibits 3 and 4, § 8.) Given that neither of the ACE Rules, nor the Arbitration Agreement determine who decides the arbitrability of the Arbitration Agreement, the parties agreed that the AAA Rules would decide. Those rules unambiguously delegate the issue of arbitrability to the arbitrator, not the courts. (Exh. B, § 6(a).)

By specifically incorporating the AAA rules into their agreement and by expressly agreeing that an arbitrator will resolve any disputes of enforceability, both Plaintiff and ACE clearly and unmistakably evidenced their intent to delegate issues relating to the existence, scope, or validity of the arbitration agreement to an arbitrator. Therefore, Plaintiff's objections to the arbitration agreement, if any, must be considered by an arbitrator, not this Court. And even if Plaintiff asks the Court to excuse him from compliance with the agreement he entered with ACE, the Court should not decide that issue but should compel the case to arbitration pursuant to the delegation clause to reserve the issue for an arbitrator.

**III.     The Arbitration Agreement is Valid and Enforceable.**

Even if there were no delegation clause, that simply means the Court must itself decide whether Plaintiff's claims are subject to arbitration. They are.

8

Where no valid and enforceable delegation clause exists, this Court must first determine (1) whether "a valid agreement to arbitrate exist[s], and if so," (2) whether "the dispute falls within those terms." *See Kagan v. Master Home Products Limited*, 193 S.W.3d 401, 405 (Mo. App. 2006); *Carlisle*, 2008 WL 68845 at *2. The limited role of the Court is to determine simply whether the parties have entered a valid agreement to arbitrate, without weighing the merits of the claim. *See Village of Cairo*, 685 S.W.2d 253, 260 (Mo. App. 1985). In fact, if the court concludes that the dispute is committed to arbitration by an agreement, it must immediately send the case to arbitration. *See e.g. McIntosh*, 48 S.W.3d at 89. Here, because the parties entered into a valid Arbitration Agreement and Plaintiff's claims fall within the terms of the agreement, the Court should compel arbitration.

### A. The Arbitration Agreement is Valid

Plaintiff and ACE entered into a valid agreement to arbitrate all employment disputes and disagreements "that concern a right, privilege or interest recognized by applicable law. Such disputes include claims, demands, disputes, controversies or actions under…the Age Discrimination in Employment Act … the Americans with Disabilities Act … and under any other federal, state or local statute, regulation, ordinance or common law doctrine, regarding… employment discrimination." (Carson Decl. ¶ 5, Ex. 2.) Plaintiff's receipt of this Arbitration Agreement, and his specific agreement to be bound by it is reflected by his printed and handwritten signature and date. (*Id*., ¶ 13, Ex. 2.) ACE's Offer Letter explicitly made Plaintiff's employment conditioned upon his acceptance of the Arbitration Agreement, and the Arbitration Agreement itself spells this out. (*Id*., Ex. 1, p. 2; Ex. 2, p. 1.) The final paragraph in the Arbitration Agreement makes absolutely clear that an employee's signature means that:

> I agree that, in the event I have any employment related legal claims, I will submit them to final and binding neutral third-party arbitration, in accordance with the

ACE Employment Dispute Arbitration Policy recited above, which is made a part of this agreement. I understand that this agreement means that I cannot bring any employment related claim in court and that I waive my right to a jury trial for such claims.

(*Id.*, ¶ 12, Ex. 2, p. 3.)

Ordinary contract principles govern whether parties have agreed to arbitrate a dispute. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006). Under Missouri law, the "essential elements of a valid contract include offer, acceptance and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988) (citations omitted). As set forth below, each element of a valid contract is present in this case and the arbitration agreement should be enforced.

    1. <u>The Requisite Offer and Acceptance Are Present Here.</u>

A valid offer and acceptance are present here. To be valid, an offer must be sufficiently definite in its terms and must be communicated to the offeree. *Property Assessment Review, Inc. v. Greater Missouri Builders, Inc.*, 260 S.W.3d 841 (Mo. App. E.D. 2008). Where the terms of the mandatory arbitration program are clear and unambiguous, the Court will look to the language of the contract alone to determine the parties' intent. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428-29 (Mo. banc 2003) (enforcing mandatory arbitration where language of the agreement was "clear" and "unambiguous"), citing *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 833-35 (8th Cir. 1997) (enforcing arbitration agreement where agreement's language was "clear and unambiguous").

ACE's offer was definite in form and clearly communicated to Plaintiff and, therefore, constituted a valid offer. Plaintiff had actual notice of the Arbitration Agreement's terms, as evidenced by his signature. (Carson Decl., ¶ 13, Ex. 2., p. 3.) Plaintiff's signature on this receipt

10

evidences his acceptance of the offer. Plaintiff's decision to accept and continue his employment with ACE further evidences a knowing acceptance of ACE's offer. Accordingly, Plaintiff should be bound by the Arbitration Agreement.

### 2. *There is Sufficient Consideration for the Arbitration Agreement.*

The final element required to form a valid contract, consideration, is also present here. Consideration is present when the parties' have exchanged mutually binding promises that impose some legal duty or liability on each promisor. *See, e.g., Morrow*, 273 S.W.3d at 25 (consideration satisfied by mutual promises to do or refrain from doing something); *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. Ct. App. W.D. 2010) (a contract that contains "mutual promises imposing some legal duty or liability on each promisor is supported by sufficient consideration to form a valid, enforceable contract."). Consideration is also demonstrated through one party's agreement to transfer or give up something of value to the other party. *Morrow*, 273 S.W.3d at 25.

Here, consideration is satisfied because both Plaintiff and ACE mutually agreed to give up their right of access to the court system by submitting all future employment-related claims to binding arbitration. (Carson Decl. ¶ 5, 7, Ex. 2., pp. 1-2.) The Arbitration Agreement expressly and unambiguously states that it applies to both Plaintiff and ACE, making arbitration the required and exclusive forum for resolving employment-related disputes regardless of which party asserts a claim against the other. (*Id*.) Additionally, the arbitration language throughout the Arbitration Agreement consistently imposes mutual obligations on both ACE and Plaintiff.  For example, the Arbitration Agreement permits either party to seek injunctive relief from a court to aid in the enforcement of an arbitrator's decision. (*Id*., Ex. 2, p. 1) Moreover, "[b]oth ACE and the employee will be bound by any decision made by a neutral arbitrator." (*Id*.)

While the mutually binding nature of the Arbitration Agreement itself is sufficient consideration, consideration is further evidenced by ACE's agreement to bear the majority of the costs of arbitration in exchange for Plaintiff's agreement to give up his right to court access in favor of mandatory, binding arbitration. In the Arbitration Agreement, ACE has greatly relieved Plaintiff of his share of the costs typically borne by both parties in litigation by promising to pay all costs beyond $200 associated with an arbitration claim brought by him against ACE. (*Id*., Exhs. 3 and 4, § 1.). This includes the costs for any arbitration filing fee, the hearing fee, and the arbitrator's fee for the hearing. It also includes the considerable burden of paying for all other ordinary and reasonable expenses of arbitration such as hearing room rental, and travel expenses for the arbitrator, AAA representatives, and any witnesses produced at the arbitrator's direction. (*Id*.) This additional benefit that ACE promised to Plaintiff is further evidence that the Arbitration Agreement is supported by adequate consideration.

Just as federal courts nationwide have previously upheld nearly identical versions of the Arbitration Agreement as valid and enforceable, the facts here demonstrate that it also meets all requirements for a valid, enforceable contract under Missouri law. The fundamental principles of fairness and equity require that this Court hold Plaintiff to his contractual agreement to arbitrate all covered disputes regarding his employment with ACE by granting Defendant's Motion.

    **B.**  **The Arbitration Agreement Applies to Plaintiff's Claims.**

Not only is it indisputable that Plaintiff accepted the Arbitration Agreement and is bound by its terms, but it is also indisputable that it covers Plaintiff's claims against ACE. Plaintiff's ADEA, ADA, and MHRA claims clearly constitute an employment dispute and fall within the scope of the Arbitration Agreement, which covers "all employment-related disagreements and problems that concern a right, privilege or interest recognized by applicable law … includ[ing]

claims, demands, disputes, controversies or actions under … the [ADEA] … the [ADA] … and under any other federal, state or local statute, regulation, ordinance or common law doctrine, regarding … employment discrimination." (*Id*., ¶ 5, Ex. 2.) The United States Supreme Court has held that arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). The Arbitration Agreement in this case clearly encompasses Plaintiff's claims; no other interpretation is possible.

### IV.   The Litigation Must Be Dismissed or Stayed Because the Parties Agreed to Arbitrate.

In this case, Plaintiff's only claims are discrimination claims brought under the ADEA, ADA, and MHRA. As noted above, these claims clearly fall within the scope of arbitrable claims under the Arbitration Agreement. Where, as here, all of a plaintiff's claims are subject to arbitration, the Court may dismiss the matter rather than stay it and compel arbitration. *See Medscript PBM, Inc. v. Procare PBM, Inc.*, 2008 WL 4941002, at *7 (E.D. Mo. 2008) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration")). At the very least, in the alternative, the Court should stay these proceedings pending arbitration. *See* 9 U.S.C. § 3; *Hewitt v. St. Louis Rams Partnership*, 409 S.W.3d 572, 574 (Mo. App. 2013) ("when arbitration is compelled, the trial court should stay the proceedings in its own forum").

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court enter an Order compelling arbitration between the parties and dismissing Plaintiff's claims, or staying proceedings in this action until arbitration has been completed; award Defendant its attorneys'

fees, costs and expenses in bringing this Motion; and for such other relief as the Court deems just and proper.

                                       Respectfully submitted,

                                       OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

                                       /s/ *Sean J. Oliveira*
                                       Eric A. Todd,  #46919
                                       Sean J. Oliveira, #72056
                                       7700 Bonhomme Avenue, Suite 650
                                       St. Louis, MO  63105
                                       Telephone:  314-802-3935
                                       Facsimile:  314-802-3936
                                       eric.todd@ogletree.com
                                       sean.oliveira@ogletree.com

                                       **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

      The undersigned certifies that on September 30, 2022, the foregoing was served via the Court's e-filing system, which provides electronic notice to the following:

Joseph A. Ott
Mark E. Blankenship, Jr.
Ott Law Firm
3544 Oxford Blvd.
Maplewood, MO 63143
Phone: 314-293-3756
Fax: 314-689-0080

Attorneys for Plaintiff

                                       /s/ *Sean J. Oliveira*
                                       An Attorney for Defendant